UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JANE ABEL,**
        **Plaintiff,**

v.                                                Case No. 2:10-CV-566-36DNF

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**
        **Defendant.**
_____/

## **REPORT AND RECOMMENDATION**

## **TO THE UNITED STATES DISTRICT COURT**

      Plaintiff appeals to the district court from a final decision of the Commissioner of Social Security denying her applications for a period of disability, disability insurance benefits, and for Supplemental Security Income (SSI)[1] benefits under 216(I), 223(d) and 1614(a)(3)(A) of the Social Security Act. Plaintiff applied for benefits on May 31, 2006, alleging disability beginning January 1, 2002. Plaintiff was denied on September 7, 2006, and upon reconsideration on January 5, 2007. Plaintiff timely requested a hearing which was held on August 15, 2008, before Administrative Law Judge ("ALJ") Dores D. McDonnel, Sr. Plaintiff was represented by counsel. On July 30, 2010, Appeals Council denied Plaintiff's timely request for review. The ALJ's decision became the final decision of the Commissioner. For the reasons set forth below, it is respectfully recommended that this case be **AFFIRMED**.

---

[1] The disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

1

Plaintiff timely pursued and exhausted her administrative remedies making this claim ripe for judicial review. The Commissioner has filed a transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

**I.     SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION
        AND STANDARD OF REVIEW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

At Step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date of January 1, 2002 (Tr. 17)[2]. At Step 2, the ALJ found that Plaintiff has the following severe impairments: "Osteo-arthritis; degenerative disc disease of the cervical spine, with cervical radiculopathy; chronic low back pain; and chronic hepatitis C. (Tr. 17). At Step 3, the ALJ found Plaintiff did not have an impairment or combination of

---

[2] Plaintiff earned $2,144.75 in 2002, and $761.06 in 2003 which is not considered substantial gainful activity. (Tr. 17).

impairments which met the criteria of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d) and 416.920(d), 416.925 and 416.926 (Tr. 19). At Step 4, the ALJ determined Plaintiff has the ("RFC") residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant could only occasionally climb ladders/ropes/scaffolds, stoop, or crawl. (Tr. 20). The ALJ determined Plaintiff could return to her past relevant work as an office worker and as a data entry clerk (Tr. 24). Accordingly, the ALJ determined Plaintiff not disabled at step five of the sequential evaluation 20 C.F.R. 404.1565 and 416.965 (Tr. 24).

The standard or scope of review applicable to this case is limited to determining whether the findings of the Commissioner are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971), and whether the correct legal standards were applied, *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is defined as "'more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). The reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its own] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm the Commissioner's decision if the decision is supported by substantial evidence. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

## II. REVIEW OF FACTS

### (1) Background Facts:

Plaintiff was born on August 19, 1957, and was 51 years old at the time of the hearing (Tr. 28). Plaintiff testified that she obtained her GED and completed about twelve months of college (computer technology) when she was in her 40's (Tr. 28). Plaintiff was active duty Air Force from January of 1977 until August of 1979; and in May of 1980 (after the birth of her son) joined the Air Force Reserves until she retired in 1996 (Tr. 29). Plaintiff testified she was a aircraft propeller mechanic on active duty and became a training manager in the Reserves (Tr. 30). Plaintiff also testified she worked as an "unarmed" security officer for about six months, at one time sold "Home Interiors" and worked at Sam's Club making pizzas (Tr. 31-32).

Plaintiff alleged that she became unable to work on January 1, 2002, because of a back injury, disc problems, arthritis, hearing loss, Hepatitis C, and mental illness (Tr. 109). After a review of the entire record, including Plaintiff's testimony, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work, except that she could only occasionally stoop, crawl, or climb ladders, ropes, or scaffolds (Tr. 20). The ALJ further found that Plaintiff could perform her past relevant work as an office worker and data entry clerk (Tr. 24). Accordingly, the ALJ found that Plaintiff was not disabled at any time through September 19, 2008, the date of the ALJ's decision (Tr. 24).

Plaintiff complains of pain in her lower back, hips and tail bone (Tr. 32). Plaintiff finds it difficult to sit or walk and because of her hip pain walks with a limp (Tr. 33). Plaintiff receives treatment at Bay Pines VA Hospital because she is unable to afford treatment elsewhere.

Plaintiff advises the pain in her lower back feels like she is being "jabbed" in her lower spine and that the pain radiates and occasionally throbs. Plaintiff's left hip pain feels to her as if her "hip is coming out of the joint" (Tr. 34). Plaintiff testified to numbness in her legs a few times per week and the pain sometimes lasts all day (Tr. 34). Plaintiff testified she can sit only 15 to 20 minutes and then has to stand up and move around. Plaintiff advised that she can only stand for about 10 minutes. Plaintiff relays her pain threshold (even with Vicodin and muscle relaxers) is anywhere between 6 and 8 and sometimes around 10. (10 representing the strongest pain and 1 representing the weakest) (Tr. 36).

Plaintiff advises that she sees VA doctors for her depression. Plaintiff has been prescribed various anti-depressants but is currently taking Wellbutrin (Tr. 37). Plaintiff advises despite the anti-depressants she is subject to "crying a couple of times per day for no reason" and has "constant thoughts of suicide" (Tr. 37). Plaintiff also experiences anxiety attacks (Tr. 38). Plaintiff is also taking Vicodin Hydrocodone for her pain (Tr. 38).

Plaintiff advises she was diagnosed with hepatitis C in 1996. Plaintiff sometimes "turns yellow" and becomes very fatigued (Tr. 39).

Plaintiff has neck problems and can only turn her head a certain way, otherwise her neck "locks up" (Tr. 40). Plaintiff has to "relax every muscle in her body to unlock it (Tr.40). Plaintiff was advised by VA doctors in California that this occurrs because she has curvature

of the spine. Plaintiff's neck locks up a couple of times per week and when that happens she loses feeling in her left arm, hand and fingers. Further, the numbness lasts for a couple of days (Tr. 40-41).

Plaintiff testified that she is on 20 percent disability from the VA (Tr. 42). Ten percent is due to Plaintiff suffering from tinnitus and the other 10 percent due to her back problems. Plaintiff stated she suffers tinnitus constantly and that the ringing from tinnitus becomes so bad that she cannot hear anything at all, and has difficulty hearing male voices (Tr. 42).

Plaintiff stated she has difficulty getting dressed, grooming herself and taking care of her personal needs. Plaintiff sometimes stays in her pajamas all day and spends most days sitting around the house. Plaintiff stays in bed about 90 percent of the day. Plaintiff advised the VA doctors suggested that back surgery was a possibility but there was a good chance she could end up in a wheel chair for the rest of her life (Tr. 44).

Plaintiff also claims difficulties with attention, concentration, and memory. Plaintiff writes thing down to remind herself of things she needs to do. Finally, Plaintiff testified that both her mental and physical impairments are very bothersome for her (Tr. 43-45).

### III.    SPECIFIC ISSUES

#### A.    THE ALJ FAILED TO PROPERLY EVALUATE THE SEVERITY AND LIMITING EFFECTS OF PLAINTIFF'S DEPRESSION AND TINNITUS

Plaintiff argues that the ALJ did not properly evaluate the severity and limiting effects of her depression and tinnitus (Doc. 22 at 9-19). However, Plaintiff has not produced

6

evidence to demonstrate that these impairments were "severe" or that they caused limitations inconsistent with her "RFC" for light work.

It is Plaintiff's burden to prove that she has a severe physical or mental impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (a claimant bears the burden of showing "at step two that [she] has a medically severe impairment or combination of impairments"). An impairment is severe if it significantly affects a claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). To demonstrate that an impairment is severe, Plaintiff must show more than the mere diagnosis of an impairment, as a diagnosis does not reflect a specific degree of functional limitation. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987), *Moore v. Barnhart*, 405 F.3d 1208,1213 n.6 (11th Cir. 2005)

In this case, Plaintiff has not demonstrated that her depression and tinnitus impairments were "severe" or caused limitations inconsistent with her RFC for light work.

Plaintiff argues that her depression was a "severe" mental impairment and that the ALJ erred by misinterpreting Plaintiff's assessed Global Assessment of Functioning (GAF) score of 50 (Doc. 22 at 9). Plaintiff cites Dr. J. L. Bernard's statements that her dress and grooming were "marginally acceptable," that she was a reliable historian, and that her description of her symptoms "sounded valid" (Doc. 22, Tr. 472)). Plaintiff goes on to argue by citing the symptoms of major depressive disorder as recounted in the <u>Diagnostic & Statistical Manual of Mental Disorders</u> (DSM-IV) and noting her own testimony that she experienced crying spells, suicidal thoughts, anxiety, and panic attacks (Doc. 22 at 10-11 (Tr. 36-39)). However, these citations do not establish a severe mental impairment, in light of the evidence cited by the ALJ in finding Plaintiff's depression non-severe.

Plaintiff's citation to her GAF score does not in itself establish that Plaintiff experiences specific functional limitations or has a severe mental impairment. *Wind v. Barnhart*, 133 F. App'x. 684, 692 (11th Cir. 2005). The ALJ recognized this by stating that the GAF score "is not the conclusive measure of mental functioning for Social Security purposes" (Tr. 18). Additionally, Plaintiff's citations to the DSM-IV are unavailing because Plaintiff failed to present any evidence beyond her own testimony that she actually experienced the symptoms identified in the DSM-IV (Doc. 22 at 10-11). Therefore, her citations to the DSM-IV should be disregarded, particularly in light of the substantial evidence that was before the ALJ that Plaintiff's depression was not severe and did not cause the limitations reflected in the DSM-IV.

The ALJ considered the examination notes of psychologist Dr. Bernard, who assessed the GAF score (Tr. 18, 472-74). Dr. Bernard's notes do not reflect any functional limitations connected with Plaintiff's mental impairment (Tr. 472-74). During the examination, Plaintiff had a good attitude, was cooperative, and was a reliable historian (Tr. 472). The ALJ considered Dr. Bernard's report that Plaintiff's "thought processes were clear, rational, and logical," and that her "[i]nsight and judgment are probably on a par with her IQ," which he estimated to be "at the upper end of the Average range" (Tr. 18, 473). The ALJ also considered that Plaintiff's score of 28 out of 30 on the Folestein MMSE test "clearly contraindicates cognitive dysfunction" (Tr. 18, 473). Thus, Plaintiff's citations to Dr. Bernard's statements about her attire, her reliability as a historian, and her symptoms do not establish that her depression was severe or caused limitations inconsistent with the mental demands of light work (Tr. 472)).

The ALJ also considered the January 4, 2007, opinion of state agency psychologist Dr. Carol Deatrick that Plaintiff's mental impairment was not severe (Tr. 19, 476). The ALJ considered Plaintiff's demeanor at the hearing, noting that she "seemed in no apparent distress and was very demonstrative" (Tr. 19). The ALJ further considered that the record was "devoid of any hospitalizations for any mental disorder" (Tr. 19, 181-502).

The ALJ properly concluded that Plaintiff experienced no limitations to social functioning or activities of daily living; mild limitations to concentration, persistence, or pace; and no episodes of decompensation, and therefore her depression was not "severe" (Tr. 19).

Plaintiff further argues that her tinnitus was "severe" and the ALJ did not properly evaluate that impairment's limiting effects (Doc. 22 at 12-15). Plaintiff again attempts to support her argument by citations to the Attorney's Medical Advisor as evidence of ways in which tinnitus "could" exacerbate Plaintiff's other medical conditions (Doc. 22 at 14). Plaintiff has not presented any medical evidence that she actually experienced any of the effects of tinnitus, and these citations should be disregarded, particularly in light of the substantial evidence before the ALJ that Plaintiff's tinnitus was not severe.

The ALJ noted that when Plaintiff applied for benefits her interviewer noted no hearing difficulties (Tr. 18, 117). The ALJ further considered at the hearing, that the Plaintiff communicated well (Tr. 18). The ALJ also considered the Plaintiff's regular use of the telephone despite her alleged hearing difficulties. (Tr. 18, 135).

The majority of Plaintiff's Veterans Administration (VA) treatment records do not even mention Plaintiff's tinnitus among her complaints, active medical problems, past medical history, or reasons for being out of work (Tr. 181- 272, 288-341, 343-72, 457-71,498). In fact, Plaintiff's "Problem List" from the VA, updated May 30, 2006, does not include tinnitus (Tr. 247-50). A "Health Summary" dated November 21, 2006, did not list tinnitus under the heading "All problems list" (Tr. 416-17). The Commissioner found references to tinnitus or hearing loss only in the following Plaintiff's treatment records:

- Plaintiff's tinnitus is mentioned as causing a 10% service connected disability (Tr. 273);
- A notation indicates that Plaintiff receives VA disability benefits because of "hearing problems" (Tr. 287);
- Plaintiff is noted to be "hard of hearing" (Tr. 373);
- Plaintiff is noted to have tinnitus (Tr. 342, 456).

At most, these records may establish that Plaintiff experienced tinnitus, but such conclusory references are insufficient to demonstrate that the tinnitus caused significant functional limitations and is therefore "severe." *Johns*, 821 F.2d at 555; *Moore*, 405 F.3d at 1213 n.6. Therefore, Plaintiff does not present any medical evidence that her tinnitus caused significant functional limitations.

Plaintiff argues that the ALJ gave insufficient weight to the VA's determination that she experienced a 10% disability in connection with her tinnitus (Doc. 22 at 12, 17-18 (citing Tr. 273)). The determination of another governmental agency about whether a claimant is disabled is based on the rules of that other agency and is not binding on the Commissioner. 20 C.F.R. §§ 404.1504, 416.904; Social Security Ruling (SSR) 06-3p, 2006 WL 2329939, at *6-7 (S.S.A. 2006); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (1983).

The Eleventh Circuit has held that an ALJ may implicitly address a VA disability rating by "rel[ying] on the VA records and referenc[ing] the disability ratings, in addition to rest of the relevant evidence." *Kemp v. Astrue*, 308 F. App'x 423. 426 (11th Cir. 2009).

In this case, the ALJ specifically referred to the VA's disability rating and cited the VA's treatment records throughout his decision (Tr. 17-23). The ALJ discounted the VA's disability rating because "their standards are more lenient," and the ALJ also considered that Plaintiff's examining sources, including her VA doctors, did not opine that she experienced restrictions greater than those assessed by the state agency physicians, who reviewed Plaintiff's treatment records and opined that she experienced no hearing limitations (Tr. 23, 409-10, 412, 491-92, 494). The ALJ properly considered the VA's assessment and the evidence underlying it.

### B. THE ALJ ERRED FOR FINDING PLAINTIFF'S ALLEGATIONS OF LEFT ARM IMPAIRMENT NOT FULLY CREDIBLE

Plaintiff argues that the ALJ did not properly evaluate her allegation that she sometimes loses use of her left arm for several days (Doc. 22 at 15-17). Plaintiff argues that this allegation was credible because of the medical evidence pertaining to her cervical spine and muscle spasms (Doc. 22 at 16) (Tr. 190, 192, 194-95, 199, 208, 219, 230-40). The ALJ found Plaintiff had "severe" degenerative disc disease of the cervical spine, with cervical radiculopathy, and accommodated this impairment by limiting Plaintiff to light work (Tr. 17). If Plaintiff believes that she experienced additional restrictions than were found by

the ALJ, it is her burden to present evidence of those limitations. *Yuckert*, 482 U.S. at 146 n.5 (a claimant bears the burden of showing "at step two that [she] has a medically severe impairment or combination of impairments").

The only evidence Plaintiff provides as to her alleged left arm impairment are her own complaints (Doc. 22 at 15-16) (Tr. 40-41, 194, 236, 291). The ALJ addressed and properly discredited these allegations. It is within the province of the ALJ to decide questions of credibility. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). An ALJ is not required to accept a claimant's subjective allegations of pain or other symptoms and may properly consider the credibility of a claimant when making a determination of disability. *Wilson*, 284 F.3d at 1225-26. If the ALJ rejects a claimant's testimony concerning pain on credibility grounds, the ALJ must clearly "articulate explicit and adequate reasons" for discrediting Plaintiff's allegations. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

The ALJ specifically considered Plaintiff's allegations of "severe pain in her neck and left shoulder which radiated down her left arm, causing numbness in the fingers of her left hand" and of neuropathy in her left hand (Tr. 21, 189, 194, 291). The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms" but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the clinical record and [Plaintiff's RFC for light work]" (Tr. 21).

The ALJ determined that Plaintiff's neck and left shoulder complaints were inconsistent with the medical evidence (Tr. 21-22). Inconsistencies between a claimant's subjective complaints and the other evidence in the record are relevant to the claimant's credibility. 20 C.F.R. §§ 404.929(c)(4), 416.929 (c)(4); *Dyer*, 395 F.3d at 1212. The ALJ found that the imaging of Plaintiff's left shoulder on May 17, 2006, showed "no bone or joint abnormalities," unremarkable soft tissues, and overall a "[n]ormal left shoulder" (Tr. 21, 251). The ALJ also considered and gave "some weight" to the reports from two state agency physicians (Dr. Thomas Renny, D.O. and Albert Ponterio, M.D.) who reviewed Plaintiff's medical records in 2006 and 2007 (Tr. 22, 23, 408-15, 490-97). Neither physician found that Plaintiff experienced any manipulative limitations (Tr. 411, 493).

The ALJ further found that other examining sources did not suggest that Plaintiff was more limited than was suggested by these state agency physicians (Tr. 23). The few references to Plaintiff's alleged left arm impairment in her treatment notes do not reflect that Plaintiff experienced the manipulative limitations she alleges. On March 3, 2005, Plaintiff cancelled an EMG that had been scheduled to evaluate her neuropathy, saying the test was "no longer needed" (Tr. 291). Similarly, on May 30, 2006, Plaintiff complained of neuropathy, but x-rays were within normal limits (Tr. 189-90, 194, 196).

The ALJ determined that Plaintiff's reported activities of daily living were inconsistent with her subjective complaints (Tr. 22-23). The regulations and this Circuit permit an ALJ's consideration of daily activities when assessing a claimant's credibility. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(I); *Hennes v. Comm'r of Soc. Sec.*, 130 F. App'x 343, 348-49 (11th Cir. 2005). As stated previously, Plaintiff testified she was in bed 90% of

the day. However, the ALJ considered and reviewed a function report wherein Plaintiff stated that she helped her aunt with the housework, took her aunt on errands, walked to the mailbox, fixed lunch and dinner and took care of cats (Tr. 23, 132). Plaintiff also reported no difficulties with personal care, other than remembering to take her medications (Tr. 131, 132-33). The ALJ also considered Plaintiff's reports that she washed dishes, did laundry, mowed and weeded the yard, and went shopping (Tr. 23, 131, 133, 134). These activities belie Plaintiff's complaints that her left shoulder caused additional manipulative limitations. Thus, the ALJ properly discredited Plaintiff's allegations of restrictions from her left arm impairment because Plaintiff has not provided any medical evidence to establish additional manipulative restrictions.

### C. THE ALJ ERRED IN FINDING PLAINTIFF COULD PERFORM HER PAST RELEVANT WORK

Plaintiff argues that the ALJ erred in finding that she could perform her past relevant work as an office worker and data entry clerk (Doc. 22 at 18-20). This argument lacks merit, as substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work.

Plaintiff suggests that her work as an office worker and data entry clerk was not, in fact, past relevant work (Doc. 22 at 20). The record makes clear that Plaintiff's work as an office worker and data entry clerk satisfies the regulatory definition of past relevant work. "Past relevant work is work that you have done within the last 15 years, that was substantial gainful activity, and that lasted long enough for you to learn how to do it." 20 C.F.R. §§ 404.1560, 416.960. If Plaintiff believes that her job does not satisfy this definition, she bears

14

the burden of proving that her former job was not past relevant work. *Barnes*, 932 F.2d at 1359; *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989) (noting that a claimant bears the burden of proving disability, "which includes the burden of showing that certain work experience is not past relevant work."). In this case, Plaintiff merely alleges that her work was "an on-and-off endeavor" (Doc. 22 at 20 ( Tr. 99-105)).

At the hearing, Plaintiff testified that she performed office work and data entry while working for various temporary services (Tr. 30). She reported that this work was her only work between 1998 and 2002, which is within the last 15 years (Tr. 123). In 2000, Plaintiff earned a total of $18,798.56, or $1566.55 per month (Tr. 103). By regulation, work occurring in 2000 that produced average monthly income in excess of $700 per month generally reflected that the claimant was performing substantial gainful activity. 20 C.F.R. §§ 404.1574(b)(2)(I), 416.974(b)(2)(i).

Plaintiff also performed this work long enough to learn how to do it. According to the DOT, the job of office helper can be learned through "[a]nything beyond short demonstration up to and including 1 month" of work. § 239.567-010, available at 1991 WL 672232. The job of data entry clerk can be learned in "[o]ver 3 months up to and including 6 months" of work. DOT § 203.582-054, available at 1991 WL 671700. In this case, Plaintiff worked as an office worker and data entry clerk from March 1998 to October 2002 (Tr. 123). Plaintiff does not suggest, and the record does not reflect, that in this four year period Plaintiff worked less than six months total in this job (see Doc. 22). The record therefore indicates that Plaintiff worked long enough to learn both jobs according to the DOT. Plaintiff's work thus constitutes past relevant work.

Plaintiff suggests that the ALJ erred by not explaining how he selected the specific DOT entries that he consulted (Doc. 22 at 19). Plaintiff has not proven that the DOT entries consulted by the ALJ do not encompass her past work (Doc. 22 at 19). Furthermore, the burden is on Plaintiff to prove she cannot perform her past kind of work, rather than any specific job she held in the past. *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986). In this case, based on Plaintiff's description of her job duties, the jobs of office helper and data entry clerk reasonably encompass the type of work she has done. At the hearing, Plaintiff stated that her work involved "[a]nswer[ing] phones, data entry, [and] typing," "assist[ing] in admin[istrative] work" and carrying boxes (Tr. 30, 126). The DOT states that an "office helper" performs a variety of duties, including "[d]eliver[ing] oral or written messages" and "delivering mail, messages, documents, and packages between departments." DOT § 239.567-010, available at 1991 WL 672232. A "data clerk" "[o]perates [a] keyboard or other data entry device to enter data into computer." DOT § 203.582-054, available at 1991 WL 671700. As these job descriptions reasonably encompass the kind of work Plaintiff formerly performed, the ALJ reasonably relied on these DOT entries in assessing the demands of Plaintiff's past relevant work.

Plaintiff also argues that the ALJ could not rely on the DOT to evaluate her past relevant work because her work was a "composite job" without a DOT equivalent (Doc. 22 at 19-20). Even if Plaintiff's past relevant work was a composite job, the DOT establishes that Plaintiff could perform her past relevant work. The DOT makes clear, and the ALJ properly found, that Plaintiff's RFC for light work is compatible with the individual jobs of office

helper and data entry clerk as those jobs are generally performed in the national economy (Tr. 24). Therefore, the ALJ properly found that Plaintiff's RFC did not prevent her from performing all the exertional and non-exertional requirements of that composite job.

Plaintiff also argues that the ALJ essentially made a step five finding by concluding that she could perform work as an office worker and data entry clerk (Doc. 22 at 19). These jobs were past relevant work and the ALJ properly stopped the sequential evaluation at step four of the sequential evaluation after finding Plaintiff could perform these two jobs (Tr. 24). See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2010). As in all social security cases, Plaintiff bears the ultimate burden of proof on the issue of disability. Plaintiff has offered no evidence to demonstrate greater physical or mental limitations than those determined by the ALJ or to show that she cannot perform her past relevant work. This Court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Dyer*, 395 F.3d at 1210. The ALJ applied the correct legal standards in evaluating Plaintiff's case, and substantial evidence supports the ALJ's finding that Plaintiff was not disabled.

IV. **CONCLUSION AND RECOMMENDATION**

For the reasons stated above, it is respectfully recommended that the decision of the Commissioner be ***AFFIRMED***. Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen (14) days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

Abel - Report and Recommendation

2:10-cv-566-36-DNF

**DONE** and **ORDERED** in Chambers, Fort Myers, Florida, this 29th day of December 2011.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
of Court Mail or Deliver Copies of
this Order to All Parties and All
Counsel of Record